MASTER SERVICE CONTRACT NO. CW2289253

CONTINENTAL RESOURCES, INC.

THIS MASTER SERVICE CONTRACT ("Contract") is made and entered into this 8th day of December 2021 ("Commencement Date") by and between CONTINENTAL RESOURCES, INC., an Oklahoma corporation hereinafter referred to as "Continental," and MOUNTAIN STATES PRESSURE SERVICE, INC., on behalf of itself and its present and future subsidiaries and affiliates, hereinafter collectively referred to as "Contractor." Contractor and Continental are sometimes referred to collectively as the "Parties" and individually as a "Party".

If Contractor only provides offsite services and never enters a Continental location, which includes but is not limited to, facilities, lease locations, buildings, vehicles, or equipment, either owned, leased, or controlled by Continental ("Continental Location"), then certain provisions of this Contract will not apply to Contractor. However, if Contractor enters a Continental Location all of the provisions of this Contract will apply to Contractor.

## 1. WORK TO BE PERFORMED AND VARIATIONS TO WORK:

1.1. Continental shall be entitled, at any time during the term of this Contract, to request Contractor to provide services, labor, equipment, supplies, tools, manufactured articles, materials, facilities, and/or goods (collectively, "Work"). A general description of the primary services Contractor provides is included on Exhibit "A" which is attached hereto and made a part hereof. Notwithstanding anything in this Contract or Exhibit "A" to the contrary, Continental and Contractor agree the terms and conditions of this Contract shall at all times apply to and control all Work conducted or carried out by Contractor for Continental. It is agreed and understood that Continental is not obligated to request Work hereunder, and Contractor is not obligated to accept Work hereunder

1.2. Continental shall have the right to order any addition, deletion, substitution or any other alteration to the Work ("Variation"). In the event Contractor believes the Variation will impact the price of the Work or the time necessary to complete the Work, then Contractor shall promptly provide all necessary documentation to Continental to substantiate such impact. Notwithstanding an agreement may not have been reached as to such impact, Contractor shall, if so requested in writing by Continental, proceed diligently with performance of the Variation.

1.3. The Parties may execute a Scope of Work for the services defined in Exhibit "A". In addition, the Parties may or may not enter into a Price Agreement to govern the pricing and/or rate structure under which Work will be performed. In the event of a conflict between the terms and conditions of this Contract and the Scope of Work and/or Price Agreement, the terms and conditions of this Contract shall prevail. However, if the Parties mutually agree to a Scope of Work and/or a Price Agreement which contains terms conflicting with those set forth in subsections 1.3(a) through (c) below, the terms of the Scope of Work and/or Price Agreement agreed by the Parties in writing shall prevail to the extent of such conflict.

   (a)     In the event Contractor considers an occurrence has taken place for which it is entitled to receive a Variation, or receives any document or instruction which constitutes a Variation, it shall promptly provide all necessary documentation to Continental to substantiate the existence of a Variation and the impact thereof on the price of the Work and/or the necessary time to complete the Work. Any request for a Variation must be sent in writing to Continental within seven (7) days of the occurrence or the receipt of such document or instruction, as the case may be, failing which no Variation shall be permitted in respect of the relevant occurrence, document, or instruction.  Notwithstanding an agreement may not have been reached as to whether such occurrence, document, or instruction constitutes a Variation or on the impact thereof, Contractor shall, if so requested in writing by Continental, proceed diligently with performance of the Work.

   (b)     Pending agreement of the effect of the Variation (if any) on the price of the Work and/or the time necessary to complete the Work, and without prejudice to the rights of the respective Parties, and if the request for Work does not contain applicable rates or said rates are


EXHIBIT 1

inappropriate or not directly applicable to the Variation in question, Continental shall determine the reasonable basis for adjustment taking due consideration of the Variation.

(c)    Changes to the general pricing structure and/or rates, variations beyond the general Scope of Work under a request for Work, and/or changes to the terms of the Contract shall not be the subject of a Variation and shall only be authorized by the issuance of an amendment to the Scope of Work, the Pricing Agreement, and/or this Contract, as applicable.

## 2.    INDEPENDENT CONTRACTOR:

2.1.   Contractor warrants and agrees as follows: (i) Contractor shall act as an independent contractor and not as an employee, agent, partner, or joint-venturer of Continental in connection with this Contract or any Work; (ii) nothing contained in this Contract or any request for Work shall create or be deemed to create any such relationship between Continental and Contractor (or any member of Contractor Group); (iii) no member of Contractor Group shall hold themselves out as an employee, representative, agent, or partner of Continental;  (iv) Contractor shall have full and complete control over all Work, all work sites, tools, equipment, and all other modalities of the Work, the supervision and safety of its and its subcontractors' personnel and the step-by-step details of the Work, with no right being reserved by Continental to direct the method or manner of the Work as opposed to the results to be obtained; (v) Contractor shall have no authority to hire any persons on behalf of Continental, and any and all persons whom Contractor may employ shall be solely the employees or sub-contractors of Contractor; (vi) Contractor shall have the control and management of the Work, the selection of employees, and the fixing of their hours of labor; (vii) nothing contained in this Contract or any request for Work shall be construed to authorize Contractor to incur any debt, liability, or obligation of any nature for or on behalf of Continental; and (viii) neither Contractor nor any member of Contractor Group is under the control or supervision of Continental (or any member of Continental Group).

2.2.   Contractor shall comply with and be subject to Continental's Integrated Contractor Management Program ("ICMP") per the attached Exhibit "C".

## 3.    REPRESENTATIONS, WARRANTIES, NON-CONFORMING WORK AND INSPECTIONS:

3.1.   Contractor represents and warrants the following:

(a)    Contractor shall provide sufficient personnel at all times to ensure performance of the Work;

(b)    the Work shall be performed in a good and workmanlike manner and consistent with applicable laws and best industry practices;

(c)    the Work shall comply with Continental's specifications applicable to such Work;

(d)    all personnel employed for the Work shall be competent, properly qualified, with skill and experience appropriate to their respective roles, and Contractor shall verify all relevant qualifications of personnel;

(e)    its employees and agents have been trained to follow all applicable laws and to work safely;

(f)    all of Contractor's equipment has been thoroughly tested and inspected and is safe, sufficient, and free of any defects, latent or otherwise; and

(g)    Contractor shall remove its material and equipment from any Continental Location, and shall clean up all Continental Locations in a diligent, good, and workmanlike manner and dispose of its waste and trash in a lawful manner.

3.2.   In addition to all other remedies available to Continental, Contractor shall re-perform any non-conforming Work at Contractor's sole expense and to the reasonable satisfaction of Continental, or, at Continental's

option, promptly refund to Continental the portion of the consideration which is attributable to the non-conforming Work. If Continental elects to have Contractor re-perform the non-conforming Work, and Contractor fails to promptly commence or complete such performance to the reasonable satisfaction of Continental, then Continental shall have the right to have the non-conforming Work performed by other means, and Contractor shall be responsible for all reasonable costs incurred in doing so.

3.3. Contractor represents and warrants that all goods (excluding rental equipment addressed below) shall comply with Continental's specifications, be in good working condition, suitable for their intended purpose, free from defect in design and workmanship, be free from liens, claims, and encumbrances, and that such goods comply with all applicable laws. In addition, with respect to goods purchased by Contractor from its subcontractors, its other suppliers, or third parties, Contractor agrees to assign, and hereby does assign to Continental, all warranties and guarantees received by Contractor from the manufacturer and/or suppliers of the goods to the extent such warranties and guarantees are assignable. In addition to all other remedies available to Continental, Contractor will promptly repair or replace, at Contractor's sole expense and to the reasonable satisfaction of Continental, any defects in such goods caused by defective design, workmanship, faulty or non-conforming materials. If Contractor fails to promptly commence or complete such repair or replacement of any non-conforming good, then Continental shall have the right to repair or replace the non-conforming good, and Contractor shall be responsible for all reasonable costs incurred in doing so.

3.4. Contractor represents and warrants, upon delivery and throughout the rental period, all equipment, tools, or other items rented to Continental ("Rental Equipment") shall comply with Continental's specifications, be in good working condition, and, if requested by Continental, shall include operating manuals, most recent inspection documentation, supplies, and spare parts. In addition to all other remedies available to Continental, Contractor shall waive all rental payments owed during any time period the Rental Equipment fails to operate properly or is otherwise inoperable through no fault of Continental. Further, Contractor shall respond in a timely manner to repair or replace any Rental Equipment. If Contractor fails to promptly commence or complete such repair or replacement of any non-conforming Rental Equipment, then Continental shall have the right to repair or replace the non-conforming Rental Equipment, and Contractor shall be responsible for all reasonable costs incurred in doing so.

3.5. CONTRACTOR REPRESENTS AND WARRANTS THAT NEITHER THE USE NOR THE CONSTRUCTION OF ANY TOOLS, EQUIPMENT, MATERIALS, AND PROCESSES WHICH MAY BE USED OR FURNISHED IN CONNECTION WITH THE WORK INFRINGES ON ANY LICENSE OR PATENT OR OTHER INTELLECTUAL PROPERTY IN WHICH ANY THIRD PARTY HAS AN INTEREST, AND CONTRACTOR AGREES TO DEFEND, INDEMNIFY, AND HOLD CONTINENTAL GROUP (AS DEFINED IN SECTION 4.1) HARMLESS FROM ANY AND ALL CLAIMS, DEMANDS, JUDGMENTS, DEFENSE COSTS, OR SUITS OF EVERY KIND AND CHARACTER IN FAVOR OF OR ASSERTED BY OR IN CONNECTION WITH ANY PATENTEE, LICENSEE OR ANY OTHER THIRD PARTY CLAIMANT OF ANY RIGHT OR PRIORITY, WHETHER FOR PATENT INFRINGEMENT, COPYRIGHT INFRINGEMENT, TRADE SECRET MISAPPROPRIATION, OR OTHERWISE.

3.6. Continental may review the Work at any time, provided, however, neither Continental's failure to review the Work nor failure to discover any deficiencies shall (i) imply acceptance by Continental or waiver of any rights by Continental, or (ii) relieve Contractor of any representation, warranty, or obligation under any applicable laws, under this Contract, or otherwise.

3.7. Contractor's acceptance of and/or agreement to perform Work means that Contractor has, and warrants that it has, fully investigated and incorporated into the compensation (i) the conditions at and around the applicable worksite; (ii) the complications, hazards, and risks incident to the applicable work site and/or performing the Work; and (iii) the availability of labor, tools, material, supplies, equipment, and transportation necessary to perform the Work.

**4. CONTRACTOR'S MINIMUM INSURANCE OBLIGATIONS:**

4.1.  Contractor agrees to procure and maintain, at its sole expense (including deductibles), with solvent insurers acceptable to Continental, policies of insurance in favor of Continental, its parent, subsidiaries, and affiliated companies, its joint venturers and co-lessees, contractors, and subcontractors, and the officers, directors, employees, agents, assigns, representatives, managers, invitees, and consultants of all of the foregoing (collectively,  "Continental Group") in the minimum amounts applicable to the Work being performed as outlined in Exhibit "B"  attached hereto and made a part hereof. If the Work provided or offered by Contractor changes during the term of this Contract, and such change results in Contractor's required minimum insurance amounts increasing, Contractor agrees to update its minimum insurance amounts and provide Continental a Certificate of Insurance evidencing such higher amounts within thirty (30) days of such change. COVERAGE UNDER ALL INSURANCE REQUIRED TO BE CARRIED BY CONTRACTOR WILL BE PRIMARY INSURANCE AND EXCLUSIVE OF ANY OTHER EXISTING VALID AND COLLECTIBLE INSURANCE, AND EACH POLICY WILL NAME CONTINENTAL GROUP AS ADDITIONAL INSURED (EXCEPT FOR WORKERS' COMPENSATION AND EMPLOYER'S LIABILITY) AND WAIVE SUBROGATION OR ANY OTHER FORM OF CONTRIBUTION AGAINST CONTINENTAL GROUP AND ITS INSURERS.

4.2.  The provisions of this Section 4 shall, unless required by applicable laws, in no way limit any indemnity obligations of Contractor, and the limits and coverages of any insurance obtained by Contractor shall in no way limit the liabilities or obligations assumed by Contractor pursuant to this Contract.

4.3.  Notwithstanding the minimum coverages specified, should Contractor maintain on a general, blanket, comprehensive or similar basis any insurance, including but not limited to excess liability insurance or contractual liability insurance, in amounts greater than such minimums, then the actual insurance which Contractor shall provide hereunder will be such larger amounts carried by Contractor (or indicated in any certificate of insurance furnished by Contractor) and not the minimums referenced.

4.4.  ALTHOUGH THE SCOPE OF CONTRACTOR'S INSURANCE OBLIGATIONS IN THIS SECTION 4 MAY BE DEFINED BY REFERENCE TO THE RISKS AND LIABILITIES ASSUMED UNDER SECTION 5, THE PARTICULAR INSURANCE PROVISIONS OF THIS SECTION 4, ARE, TO THE EXTENT REQUIRED TO MAXIMIZE THEIR EFFECTIVENESS (I) SEPARATELY AND INDEPENDENTLY ENFORCEABLE AND (II) DISTINCT AND SEVERABLE FROM ANY RELEASE DEFENSE, HOLD HARMLESS, OR INDEMNITY OBLIGATIONS IN SECTION 5.

4.5.  Contractor shall furnish to Continental Certificates of Insurance evidencing proper insurance has been secured; and no Work shall be commenced or monies owed for Work performed by Contractor until the certificates are properly completed and on file with Continental (provided commencement of the Work or any payment for the Work without a properly completed Certificate of Insurance shall not constitute a waiver of any rights of Continental hereunder). Such insurance policies must contain endorsements stating Contractor will provide written notice to Continental prior to any material change in or cancellation of said insurance policies. Written notice must be made by registered or certified mail to Continental at the address provided in Section 19 thirty (30) days prior to the effective date of such change or cancellation. Upon receipt of such notice, Continental shall have the right to promptly terminate this Contract pursuant to Section 12. In addition, Contractor shall furnish Continental a complete copy of all applicable insurance policies, including all endorsements, exclusions, waivers, and other attachments, if requested by Continental in writing.

4.6.  Contractor will immediately provide verbal and written notice to Continental and, to the extent required, to governmental authorities, of any accidents or occurrences resulting in illness or injuries to any persons or damage to property, including pollution or contamination, in any way arising out of or related to the Work. Contractor shall also promptly furnish Continental with a copy of reports made by Contractor to Contractor's insurer or to others of such accidents and occurrences, including statements and any other investigative material. Without limiting the above in this Section 4.6, each Party shall notify the other Party immediately of any Claim related in any way to the Work that may be presented to or served upon it.

4.7.  SPECIAL PROVISION FOR LOUISIANA. THE FOLLOWING PROVISION APPLIES WHERE WORK IS PERFORMED IN LOUISIANA. For Work performed in Louisiana or for which Louisiana Revised Statute 9:2780 (Louisiana Oilfield Anti-Indemnity Act) would apply, Continental agrees it will,

on behalf of Continental Group, pay the premium for the extension of Contractor's insurance to cover Continental Group as an additional insured to the extent of the liabilities assumed by Contractor herein, and Contractor agrees its insurers will invoice Continental the premium for such extension of coverage in favor of Continental Group. Contractor represents and warrants such premium shall constitute all material costs for such extension of coverage. At each subsequent renewal, Contractor shall advise Continental of the amount for the premium required for such extension of coverage and shall arrange to have Continental billed for all material costs of the premium for such extension of coverage to Continental Group. For any Work or services to be performed in Louisiana or for which the Louisiana Revised Statute 9.2780 (Louisiana Oilfield Anti-Indemnity Act) would apply, Contractor agrees it will, on behalf of Contractor Group, pay the premium for the extension of Continental's insurance to cover Contractor Group as an additional insured to the extent of the liabilities assumed by Continental herein, and Continental agrees its insurers will invoice Contractor the premium for such extension of coverage in favor of Contractor Group. Continental represents and warrants such premium shall constitute all material costs for such extension of coverage. At each subsequent renewal, Continental shall advise Contractor of the amount for the premium required for such extension of coverage and shall arrange to have Contractor billed for all material costs of the premium for such extension of coverage to Contractor Group.

**5. LIABILITY AND INDEMNITY:**

5.1.  CONTRACTOR SHALL RELEASE, PROTECT, DEFEND, INDEMNIFY, AND HOLD HARMLESS CONTINENTAL GROUP FROM AND AGAINST ANY AND ALL LOSS, COST, LIABILITY, DAMAGE, CLAIM, DEMAND, SECURITY INTEREST, LIEN, CAUSE OF ACTION OR EXPENSE OF ANY KIND OR CHARACTER WHETHER CONSTITUTIONAL, STATUTORY, CONTRACTUAL, TORTIOUS, OR EQUITABLE (INCLUDING WITHOUT LIMITATION FINES, PENALTIES, JUDGMENT AMOUNTS, SETTLEMENT AMOUNTS, REMEDIAL OBLIGATIONS, ATTORNEYS' FEES, COURT COSTS AND EXPENSES) (COLLECTIVELY, "CLAIMS") FOR THE FOLLOWING IF DIRECTLY OR INDIRECTLY ARISING OUT OF, RESULTING FROM, OR IN ANY WAY CONNECTED WITH OR RELATED TO THIS CONTRACT OR THE PERFORMANCE OF THE WORK:

(a)  ALL DAMAGES TO OR LOSSES OF PROPERTY OR INTERESTS IN PROPERTY OF CONTRACTOR, ITS PARENT, SUBSIDIARIES, AFFILIATED COMPANIES, AND SUBCONTRACTORS, AND ANY OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, ASSIGNS, REPRESENTATIVES, MANAGERS, INVITEES, AND CONSULTANTS OF ALL OF THE FOREGOING ("CONTRACTOR GROUP");

(b)  ALL PHYSICAL OR MENTAL INJURIES TO, DEATHS, OR ILLNESSES OF ANY PERSONS IN CONTRACTOR GROUP; AND

(c)  ALL PERSONAL PROPERTY OF CONTINENTAL GROUP WHILE SUCH PERSONAL PROPERTY IS IN CONTRACTOR GROUP'S CARE, CUSTODY, OR CONTROL,

EVEN IF CAUSED BY PRE-EXISTING CONDITIONS, DEFECT, OR RUIN OF PREMISES OR EQUIPMENT, STRICT LIABILITY, REGULATORY OR STATUTORY LIABILITY, PRODUCTS LIABILITY, BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED), BREACH OF DUTY (LEGAL, STATUTORY, CONTRACTUAL, EQUITABLE, OR OTHERWISE), ANY THEORY OF TORT, BREACH OF CONTRACT, FAULT, THE NEGLIGENCE OF ANY DEGREE OR CHARACTER (WHETHER SOLE, JOINT, OR CONCURRENT; ACTIVE, OR PASSIVE) OF CONTINENTAL GROUP OR ANY OTHER PERSON OR ENTITY, EXCEPT TO THE EXTENT CAUSED BY THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE CONTINENTAL GROUP.

5.2.  IN ADDITION TO SECTION 5.1, CONTRACTOR SHALL RELEASE, PROTECT, DEFEND, INDEMNIFY, AND HOLD HARMLESS CONTINENTAL GROUP FROM AND AGAINST ALL CLAIMS FOR THE FOLLOWING IF DIRECTLY OR INDIRECTLY ARISING OUT OF, RESULTING FROM, OR IN ANY WAY CONNECTED WITH OR RELATED TO THIS CONTRACT OR THE PERFORMANCE OF THE WORK:

(a)  ALL PHYSICAL OR MENTAL INJURIES TO, DEATHS, OR ILLNESSES OF ANY PERSON NOT INCLUDED IN THE CONTINENTAL GROUP OR CONTRACTOR GROUP ("THIRD PARTY"); AND

(b)  ALL DAMAGES TO OR LOSSES OF ANY THIRD PARTY'S PROPERTY OR INTERESTS IN PROPERTY,

SOLELY TO THE EXTENT CAUSED BY THE NEGLIGENCE OF ANY DEGREE OR CHARACTER (WHETHER SOLE, JOINT, OR CONCURRENT; ACTIVE, OR PASSIVE) OF CONTRACTOR GROUP.

5.3.  CONTINENTAL SHALL RELEASE, PROTECT, DEFEND, INDEMNIFY, AND HOLD HARMLESS CONTRACTOR GROUP FROM AND AGAINST ANY AND ALL CLAIMS FOR THE FOLLOWING IF DIRECTLY OR INDIRECTLY ARISING OUT OF, RESULTING FROM, OR IN ANY WAY CONNECTED WITH OR RELATED TO THIS CONTRACT OR THE PERFORMANCE OF THE WORK:

(a)  SUBJECT TO 5.1(C), ALL DAMAGES TO OR LOSSES OF PROPERTY OF CONTINENTAL GROUP; AND

(b)  ALL INJURIES TO, DEATHS, OR ILLNESSES OF ANY PERSONS IN CONTINENTAL GROUP,

EVEN IF CAUSED BY PRE-EXISTING CONDITIONS, DEFECT, OR RUIN OF PREMISES OR EQUIPMENT, STRICT LIABILITY, REGULATORY OR STATUTORY LIABILITY, PRODUCTS LIABILITY, BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED), BREACH OF DUTY (LEGAL, STATUTORY, CONTRACTUAL, EQUITABLE, OR OTHERWISE), ANY THEORY OF TORT, BREACH OF CONTRACT, FAULT, THE NEGLIGENCE OF ANY DEGREE OR CHARACTER (WHETHER SOLE, JOINT, OR CONCURRENT; ACTIVE, OR PASSIVE) OF CONTRACTOR GROUP OR ANY OTHER PERSON OR ENTITY, EXCEPT TO THE EXTENT CAUSED BY THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE CONTRACTOR GROUP.

5.4.  IN ADDITION TO SECTION 5.3, CONTINENTAL SHALL RELEASE, PROTECT, DEFEND, INDEMNIFY, AND HOLD HARMLESS CONTRACTOR GROUP FROM AND AGAINST ALL CLAIMS FOR THE FOLLOWING IF DIRECTLY OR INDIRECTLY ARISING OUT OF, RESULTING FROM, OR IN ANY WAY CONNECTED WITH OR RELATED TO THIS CONTRACT OR THE PERFORMANCE OF THE WORK:

(a)  ALL INJURIES TO, DEATHS, OR ILLNESSES OF ANY THIRD PARTY; AND

(b)  ALL DAMAGES TO OR LOSSES OF ANY THIRD PARTY'S PROPERTY,

SOLELY TO THE EXTENT CAUSED BY THE NEGLIGENCE OF ANY DEGREE OR CHARACTER (WHETHER SOLE, JOINT, OR CONCURRENT; ACTIVE, OR PASSIVE) OF CONTINENTAL'S EMPLOYEES AT THE WORKSITE.

5.5.  CONTRACTOR SHALL ASSUME RESPONSIBILITY FOR, AND SHALL RELEASE, PROTECT, DEFEND, INDEMNIFY, AND HOLD HARMLESS CONTINENTAL GROUP FROM AND AGAINST, ALL COSTS AND LIABILITY RELATING TO THE CONTROL AND REMOVAL OF POLLUTION OR CONTAMINATION DIRECTLY OR INDIRECTLY ARISING OUT OF, RESULTING FROM, OR IN ANY WAY CONNECTED WITH OR RELATED TO THE PERFORMANCE OF THE WORK:

(a)  WHICH ORIGINATES FROM SPILLS OF FUELS, LUBRICANTS, MOTOR OILS, PIPE DOPE, PAINT, SOLVENTS, BALLAST, BILGE AND GARBAGE, DEBRIS OR ANY OTHER SUBSTANCES IN CONTRACTOR GROUP'S POSSESSION OR CONTROL OR ORIGINATING FROM ALL MATERIALS, MACHINERY, SUPPLIES, EQUIPMENT OR PROPERTY OF

CONTRACTOR GROUP EVEN IF CAUSED BY PRE-EXISTING CONDITIONS, DEFECT, OR RUIN OF PREMISES OR EQUIPMENT, STRICT LIABILITY, REGULATORY OR STATUTORY LIABILITY, PRODUCTS LIABILITY, BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED), BREACH OF DUTY (LEGAL, STATUTORY, CONTRACTUAL, EQUITABLE, OR OTHERWISE), ANY THEORY OF TORT, BREACH OF CONTRACT, FAULT, THE NEGLIGENCE OF ANY DEGREE OR CHARACTER (WHETHER SOLE, JOINT, OR CONCURRENT; ACTIVE, OR PASSIVE) OF CONTINENTAL GROUP OR ANY OTHER PERSON OR ENTITY;

(b)   WHICH OTHERWISE RESULTS FROM PERFORMANCE OF THE WORK HEREUNDER BY CONTRACTOR GROUP, SOLELY TO THE EXTENT CAUSED BY THE NEGLIGENCE OF ANY DEGREE OR CHARACTER (WHETHER SOLE, JOINT, OR CONCURRENT; ACTIVE, OR PASSIVE) OF CONTRACTOR GROUP.

5.6.   CONTRACTOR AGREES TO ASSUME RESPONSIBILITY FOR AND SHALL RELEASE, PROTECT, DEFEND, INDEMNIFY, AND HOLD HARMLESS CONTINENTAL GROUP FROM AND AGAINST ANY FINES, PENALTIES, DAMAGES OR ANY OTHER FORM OF REGULATORY OR GOVERNMENTAL LIABILITY RESULTING FROM CONTRACTOR GROUP'S PERFORMANCE OF THE WORK TO THE EXTENT CAUSED BY THE NEGLIGENCE OR OTHER FAULT OF CONTRACTOR GROUP, EVEN IF CONCURRENTLY CAUSED BY PRE-EXISTING CONDITIONS, DEFECT, OR RUIN OF PREMISES OR EQUIPMENT, STRICT LIABILITY, REGULATORY OR STATUTORY LIABILITY, PRODUCTS LIABILITY, BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED), BREACH OF DUTY (LEGAL, STATUTORY, CONTRACTUAL, EQUITABLE, OR OTHERWISE), ANY THEORY OF TORT, BREACH OF CONTRACT, FAULT, THE NEGLIGENCE OF ANY DEGREE OR CHARACTER (WHETHER SOLE, JOINT, OR CONCURRENT; ACTIVE, OR PASSIVE) OF CONTINENTAL GROUP OR ANY OTHER PERSON OR ENTITY.

5.7.   IN SITUATIONS IN WHICH A CLAIM COVERED BY SECTION 5.2, 5.4, OR 5.5(B) ABOVE IS THE RESULT OF JOINT OR CONCURRENT NEGLIGENCE OR OTHER FAULT OF CONTRACTOR GROUP AND ANY EMPLOYEE OF CONTINENTAL, EACH PARTY'S DUTIES OF INDEMNIFICATION AND DEFENSE SHALL BE IN PROPORTION TO ITS PROPORTIONATE SHARE OF NEGLIGENCE OR OTHER FAULT.

5.8.   IT IS THE INTENT OF THE PARTIES THAT EACH PARTY'S INDEMNITY OBLIGATIONS PURSUANT TO THIS CONTRACT SHALL EXTEND TO THE INDEMNIFIED PARTY'S GROUP AS WELL AS ANYONE TO WHOM THE INDEMNIFIED PARTY OWES CONTRACTUAL INDEMNITY.

5.9.   EACH PARTY SHALL WAIVE AND SHALL RELEASE, PROTECT, DEFEND, INDEMNIFY, AND HOLD HARMLESS THE OTHER PARTY FROM AND AGAINST ANY AND ALL CLAIMS FOR CONSEQUENTIAL DAMAGES (INCLUDING LOST PROFIT, DEFERRED PRODUCTION, DOWN TIME, LOSS OF RENT/HIRE, AND UNABSORBED OVERHEAD) OF THE INDEMNIFYING PARTY (AND ITS RESPECTIVE GROUP) DIRECTLY OR INDIRECTLY ARISING OUT OF OR IN ANY WAY CONNECTED WITH OR INCIDENT TO THIS CONTRACT, EXCEPT TO THE EXTENT CAUSED BY THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE OTHER PARTY.

5.10.  IN THE EVENT ANY OF THE WORK IS PERFORMED IN ANY OF THE FOLLOWING STATES, THE FOLLOWING SPECIAL PROVISIONS SHALL APPLY:

(a)   **SPECIAL PROVISION FOR NEW MEXICO. THE FOLLOWING PROVISION APPLIES WHERE WORK IS PERFORMED IN NEW MEXICO**. TO THE EXTENT THIS SECTION 5 IS DEEMED TO BE SUBJECT TO A STATUTE LIMITING A PARTY'S INDEMNITY OBLIGATION UNDER NEW MEXICO LAW, THEN THE PROVISIONS HEREIN SHALL BE READ NOT TO INCLUDE INDEMNIFICATION FOR ONE'S OWN NEGLIGENCE.

DocuSign Envelope ID: 6CA80A12-B418-47E9-A84A-EE6C93A12BAE

(b)  **SPECIAL PROVISION FOR WYOMING. THE FOLLOWING PROVISION APPLIES WHERE WORK IS PERFORMED IN WYOMING**. TO THE EXTENT THIS SECTION 5 IS DEEMED TO BE SUBJECT TO A STATUTE LIMITING A PARTY'S INDEMNITY OBLIGATION UNDER WYOMING LAW, THEN THE PROVISIONS HEREIN SHALL BE READ NOT TO INCLUDE INDEMNIFICATION FOR ONE'S OWN NEGLIGENCE.

(c)  **SPECIAL PROVISION FOR TEXAS. THE FOLLOWING PROVISION APPLIES WHERE WORK IS PERFORMED IN TEXAS**. THE PARTIES AGREE TO THE EXTENT TEX. CIV. PRAC. & REM. CODE ANN. CH. 127 (VERNON 1997) APPLIES TO THIS CONTRACT OR THE PERFORMANCE OF THE PARTIES HEREUNDER, THEN CONTINENTAL AND CONTRACTOR AGREE TO CARRY INSURANCE IN SUPPORT OF THEIR RESPECTIVE INDEMNITY OBLIGATIONS UNDER THIS SECTION 5 IN MUTUALLY-AGREED, EQUAL AMOUNTS. EACH PARTY AGREES THE MUTUAL AMOUNT OF SUCH SUPPORTING INSURANCE SHALL BE THE LESSER OF THE MAXIMUM AMOUNT CARRIED BY EITHER PARTY AT THE TIME OF THE INCIDENT GIVING RISE TO THE CLAIM. IF A PARTY DOES NOT CARRY OR FAILS TO MAINTAIN INSURANCE AS MUTUALLY AGREED, SUCH PARTY WILL BE DEEMED TO BE SELF-INSURED IN AN AMOUNT EQUAL TO THE AMOUNT OF INSURANCE CARRIED BY THE OTHER PARTY IN COMPLIANCE WITH THIS SECTION.

5.11.  THE PARTIES FURTHER ACKNOWLEDGE AND AGREE IF ANY COURT OF COMPETENT JURISDICTION HOLDS A STATUTE LIMITING A PARTY'S INDEMNIFICATION OBLIGATION IN THIS CONTRACT IS APPLICABLE TO THE WORK, SUCH PARTY'S INDEMNIFICATION OBLIGATION UNDER THIS CONTRACT SHALL ONLY EXTEND TO THE EXTENT PERMITTED BY SUCH STATUTE.

**6.   PERMITS AND LICENSES:**

6.1.  Contractor shall obtain and maintain, at its own risk and expense, such authorizations, permits, and licenses as may be necessary for the performance of the Work and which are required to be obtained and maintained in Contractor's name.  Continental shall, if so requested in writing by Contractor, use reasonable endeavors to assist Contractor to obtain and maintain said authorizations, permits, and licenses. Contractor shall, if so requested in writing by Continental, use all reasonable endeavors to transfer all such authorizations, permits, and licenses as it may have obtained in connection with the performance of the Work into Continental's name.

**7.   SUBCONTRACTING:**

7.1.  Contractor acknowledges Continental has entered into this Contract because of the unique abilities, capabilities, and creditworthiness of Contractor. Therefore, Contractor may not subcontract any of the Work without the prior written consent of Continental, which may be withheld in Continental's sole discretion. In the event Contractor is permitted to subcontract any of the Work, then any such contract shall contain insurance protection (including a requirement to name Continental Group (as previously defined in Section 4.1) as additional insured) and indemnity protection for Continental Group, an audit provision (including the right for Continental to audit subcontractor), a conflict provision, a federal regulation provision, and an applicable law provision, all substantially similar to those of Sections 4, 5, 11, 18, 20 and 23, and any such contracts shall include an express statement the subcontractor will look solely to Contractor (and not to Continental or the Continental Group) for payment and will not file any lien or notice or statement of lien against Continental Group or any property of Continental Group. Contractor shall furnish Continental upon its request with copies of any such contracts in order to demonstrate compliance with this Section 7. Unless such contracts contain such substantially similar provisions, any personnel engaged and property used in the furnishing of such Work shall be deemed agents and employees and property of Contractor for the purpose of determining Contractor's indemnity obligations and Contractor's other obligations under this Contract and Contractor's right to enforce Continental's indemnity obligations under this Contract shall, at Continental's sole option, be void and unenforceable.

**8.   PROHIBITED ARTICLES:**

8.1. To the extent Contractor, its subcontractors, and each of their respective employees, officers, directors, agents, representatives and/or invitees access any Continental Location, they shall not possess or bring onto Continental's Location, property or work sites any illegal drugs, prescription drugs for which the individual has no prescription, legal drugs in excessive amounts, drug paraphernalia, alcoholic beverages, firearms and other weapons (except security personnel or a licensed officer who performs security services), contraband, or stolen property. If any of the above articles are brought onto Continental's Location, property or work sites, the individual possessing the prohibited articles will be ordered off the Continental Location, property or worksite and may not, in Continental's sole discretion, be permitted to re-enter. Continental's personnel may conduct searches of any individual or property on Continental's Location, property or work site without prior announcement at such times and at such locations as Continental considers appropriate.

## 9. PAYMENT FOR WORK:

9.1. Continental will pay Contractor for Work performed in accordance with the terms of the applicable work ticket as approved by Continental. The price for the Work as approved by Continental shall be Contractor's full compensation for all costs whatsoever for complete performance of the Work and for compliance with all terms and conditions of this Contract.

9.2. Payments to Contractor may be withheld, in whole or in part, by Continental if: (i) Continental determines the withholding is necessary to protect Continental from claims or losses due to Contractor's failure to comply with this Contract or the Scope of Work as set forth in Exhibit A of this Contract (if applicable); (ii) Contractor fails to furnish proof satisfactory to Continental showing all bills for material and labor have been fully paid by Contractor and its subcontractors; (iii) the Work was not performed satisfactorily to Continental; (iv) all goods, equipment, and facilities to which such payment relates are not satisfactory to Continental; or (v) Contractor has not provided proof all liens and privileges of Contractor's suppliers and subcontractors arising out of the Work have been fully released.

9.3. Contractor agrees all times during the term of this Contract to subscribe to, and maintain an account with, Continental's designated invoicing system. All invoices for Work performed by Contractor under this Contract shall be submitted to Continental through such invoicing system. Invoices shall be submitted in accordance with the Invoice Requirements sent by Continental. Continental shall pay all undisputed amounts to Contractor for appropriate Work performed. Continental may, in its sole discretion, pay disputed items without waiver of its right to seek reimbursement at a later time. Payment of Contractor's invoices shall be without prejudice to Continental's rights to subsequently challenge the correctness thereof.

## 10. TAXES AND LIENS:

10.1. Contractor agrees to pay and discharge all valid taxes, lienable claims, charges or other impositions imposed or to be imposed by any applicable law on Contractor, arising in connection with this Contract. Contractor shall promptly pay any and all amounts owing for Work performed pursuant to this Contract so no lien shall ever be permitted to attach to property of Continental Group, whether real or personal, tangible or intangible. CONTRACTOR HEREBY AGREES TO RELEASE, DEFEND, INDEMNIFY AND HOLD HARMLESS EACH MEMBER OF CONTINENTAL GROUP FROM AND AGAINST ANY AND ALL CLAIMS WHATSOEVER CONNECTED WITH ANY VALID TAX ASSESSMENTS, LIENABLE CLAIMS, CHARGES OR OTHER IMPOSITIONS IMPOSED OR TO BE IMPOSED BY ANY APPLICABLE LAW ON CONTRACTOR, ARISING IN CONNECTION WITH THIS CONTRACT AND ALL EXPENSES (INCLUDING REASONABLE ATTORNEY'S FEES) WHICH IN ANY WAY ARISE OUT OF OR ARE RELATED TO THE WORK OR THE CONTRACT. In the event of any such claim or lien, Continental Group shall have the right to withhold payment from Contractor of an amount sufficient to fully satisfy or discharge any such claim or lien.

## 11. GENERAL AUDIT:

11.1. Contractor and its subcontractors shall keep a true and correct set of records pertaining to all Work performed under this Contract, including supporting documentation, for at least three (3) years following

completion of any such Work regardless of any other retention periods that may exist. Continental, or its designee, shall have the right to audit Contractor and inspect and copy such records which may exist until any claim capable of being discovered in an audit would be barred by the applicable statute of limitation. In the event of an audit, Contractor's failure to retain the records required in this Section 11, or to present such records for Continental's audit, shall constitute acceptance by Contractor of Continental's internal audit findings regarding the Work.

## 12.  TERM and TERMINATION:

12.1. This Contract shall be effective as of the day and year first written above and shall remain in full force and effect for a primary term of five (5) years thereafter, and shall continue for an additional five (5) years unless terminated by either Party upon at least thirty (30) days written notice prior to the end of such primary term or until earlier termination in accordance with the terms and conditions hereof.

12.2. Continental may terminate this Contract, or any or all Work hereunder, in the following circumstances:

(a)     In the case of any Material Default by Contractor under this Contract or any Work hereunder, which can be remedied, Continental shall give notice of such Material Default to Contractor. If, upon receipt of such notice, Contractor does not commence, within a reasonable period of time and in any event within seven (7) days and thereafter continuously proceed with action satisfactory to Continental to remedy such Material Default, Continental may terminate this Contract, or any or all requests for Work at any time thereafter by written notice to Contractor.  For the purpose of this Contract, the term "Material Default" shall mean any breach or series of breaches by Contractor which Continental, in its sole opinion, determines to be a failure to perform an essential element of this Contract or any Work hereunder.

(b)     In the case of a Material Default which cannot be remedied, Continental may terminate this Contract, or any Work hereunder, at any time by written notice to Contractor.

(c)     If Contractor becomes bankrupt or insolvent, is unable to pay its debts as they fall due, goes into liquidation, has a receiving or administration order made against it or a petition or application made for same, makes an arrangement with its creditors, or carries on business under a receiver, trustee, administrator or supervisor for the benefit of its creditors, or if any act is done or event occurs which (under applicable laws) has a similar effect to any of these acts or events Continental may terminate this Contract, or any or all Work hereunder at any time by written notice to Contractor.

Termination shall take effect from the date specified in such written notice ("Effective Date of Termination").

12.3. Contractor shall not be entitled to any further compensation for Work performed prior to termination until such time as the Work is completed to the satisfaction of Continental and Continental has finally ascertained all costs.  Except in respect of compensation for Work satisfactorily performed prior to termination, Contractor shall not be entitled to any further compensation following Effective Date of Termination.

12.4. In the event of termination in accordance with Section 12.2, Continental shall be entitled to recover from Contractor all costs incurred by Continental in procuring alternative performance of the Work by a third party ("Incremental Costs") in excess of those costs Continental would have incurred had this Contract or the Work hereunder not been terminated ("Difference").  Continental shall use reasonable endeavors to mitigate the Incremental Costs. Continental shall have the right to recover the Difference directly from Contractor or by deducting the Difference from any monies due or which may become due to Contractor under this Contract or any Work hereunder.

12.5. Continental shall have the right to terminate this Contract or any Work hereunder at any time without cause by giving Contractor written notification specifying the date of termination.  On the Effective Date of Termination, Contractor shall discontinue performance of the Work and shall comply with

Continental's instructions regarding such termination.  Continental shall pay Contractor, in respect of the Work satisfactorily performed up to the Effective Date of Termination.

**13. FORCE MAJEURE:**

13.1. If either Party is prevented from, or delayed in, performing any of its obligations under this Contract by Force Majeure, whether in whole or in part, it must promptly notify the other Party of the circumstances constituting the Force Majeure and of the obligations the performance of which is thereby delayed or prevented and in the event of a delay, the likely duration of such delay.

13.2. For the purposes of this Contract, a Force Majeure occurrence shall mean any event beyond the control of the Party claiming to be affected thereby, and which by the exercise of reasonable care and diligence the Party was unable to prevent, including but not limited to, the following to the extent only that they satisfy the foregoing criteria:

(a)     riot, war, insurrection, rebellion or sabotage, invasion, act of foreign enemies, hostilities, acts of terrorism, civil war, rebellion, revolution, insurrection of military or usurped power (whether war be declared or not), confiscation or expropriation on orders of any governmental agencies, quasi-government agencies, departments, or subdivisions and all federal state, national, regional, municipal, local, or tribal authorities with jurisdiction over the Work;

(b)     earthquake, flood, and/or other natural physical disaster;

(c)     storms named by the National Weather Service of the United States of America or any relevant official national weather forecasting service; or

(d)     strikes or industrial disputes at a national or regional level, or strikes or industrial disputes by labor not employed by the affected Party nor its subcontractor its suppliers or other contractor and which affect a substantial or essential portion of the Work.

13.3. In the event that a Force Majeure occurrence exists and is preventing or delaying performance of any obligation under this Contract, the Party giving notice shall be excused from the performance, or the timely performance, as the case may be, of such obligation for so long as the circumstances giving rise to such prevention or delay may continue.  However, no Party shall be released from its obligations hereunder as a result of any event contributed to by the negligence or fault of the Party claiming Force Majeure nor shall a Party be released from its obligations hereunder due to the effects of a Force Majeure occurrence which could have been avoided or mitigated by the exercise of reasonable care and diligence by the Party claiming relief.  Inability of a Party to secure funds shall not be regarded as Force Majeure.

13.4. Neither Party shall be liable for failure to perform their obligations which arises as a direct consequence of a Force Majeure occurrence other than the obligation to make payments due and payable under this Contract and both Parties shall bear their own respective costs arising from and attributable to Force Majeure.

13.5. In the event of an occurrence of Force Majeure, Continental and Contractor shall promptly meet and jointly agree on a course of action and such course of action shall be implemented immediately after the meeting.

**14. CONFIDENTIALITY:**

14.1. The term "Confidential Information" shall mean information relating to the business affairs of Continental of a proprietary or confidential nature, whether communicated orally, in writing, electronically, or digitally, including by way of illustration and not limitation, (i) information concerning research and development activities, (ii) oil and gas exploration or development prospects, ideas and strategies, (iii) operating and production information and procedures, (iv) project development and processing techniques and know-how, (v) software, firmware and computer programs and elements of design relating thereto (including, for example, programming techniques and the construction of knowledge bases), (vi) geologic

and seismic maps, reports, summaries, drawings and related materials, (vii) cost, profit and market information, (viii) financial and other business information with respect to Continental which Continental has not made publicly available, (ix) business information, including materials ordered by Continental, prices and delivery schedules, (x) any information disclosed to Continental by any third party which Continental has agreed, or is otherwise obligated, to treat as confidential or proprietary, (xi) any portion of a memorandum, note, analysis, summary, report or other document, record or material prepared by or for Contractor which contains, reflects, interprets or is based upon any Confidential Information; and (xii) all information existing as of the date first above written  or thereafter developed in which there is a proprietary interest and there is a legitimate business reason for guarding against unauthorized use or disclosure.  The restrictions in this Section shall not apply to any information:  (i) which is at the time of disclosure in, or after disclosure falls into, the public domain through no fault of Contractor or any member of the Contractor Group; (ii) which is first received by Contractor from a third party who, insofar as is known to Contractor, is lawfully in possession of such information and not in breach of any contractual, legal or fiduciary obligation to Continental or the Continental Group; and (iii) disclosure of which, upon advice of counsel, Contractor reasonably deems necessary to comply with any legal or regulatory obligation which Contractor believes in good faith it has.  In the event that Contractor or anyone to whom it transmits confidential information pursuant to this Contract becomes legally required to disclose any such information, Contractor shall provide the Continental with prompt written notice so that it may seek a protective order or other appropriate remedy.  In the event that such protective order or other remedy is not obtained, Contractor shall furnish only that portion of the confidential information which is legally required to be furnished in the opinion of the Contractor's counsel and no more.

14.2. Contractor shall take all reasonable precautions to prevent disclosure of the Confidential Information to any third party. Contractor shall only disclose the Confidential Information to employees, consultants, agents, and representatives who have a need to know the Confidential Information for the express limited purposes of this Contract and who have been informed of and agreed to be bound by the nondisclosure obligations in this Contract.  Additionally, Contractor shall be jointly and severally liable for all damages incurred by Continental as a result of any breach or threatened breach of the nondisclosure obligations in this Contract by any of its officers, directors, employees, consultants, agents, and representatives.

## 15. DATA SECURITY

15.1. Contractor shall implement and maintain administrative, physical, technical, and cybersecurity systems in accordance with best industry standards and practices designed to protect the data and information provided by or on behalf of Continental (whether or not such data or information is considered Confidential Information as defined in Section 14) from theft, unauthorized disclosure, and/or unauthorized access. Contractor shall configure its infrastructure (e.g., servers and network devices) and platforms (e.g., operating systems and web servers) to be secure in accordance with best industry standards and practices. Contractor represents and warrants its collection, creation, receipt, access, use, storage, and disposal of the data and information provided by or on behalf of Continental does and will comply with all applicable privacy and data protection laws, as well as all other applicable rules, regulations, and directives. Contractor agrees to allow Continental, at all times during regular business hours, to audit, examine, or review all of Contractor's data security measures, including, but not limited to, personnel, documentation, infrastructure, applications, and platforms. Contractor's failure to comply with any of the provisions in this Section 15 is a material breach of this Contract. In such event, Continental shall have the right to promptly terminate this Contract and any Work hereunder pursuant to Section 12.

15.2. In the event Contractor discovers a breach in data security which has or may have resulted in the theft, unauthorized disclosure, and/or unauthorized access to data and/or information provided by or on behalf of Continental, Contractor shall notify Continental (within twenty-four (24) hours) of such breach in data security and immediately perform an investigation into the breach. Contractor shall provide Continental with contact information for a Contractor representative who can be reached with questions or concerns during Contractor's investigation. In addition, Contractor shall provide a report regarding the breach to Continental which specifically identifies: (i) the data and/or information subject to the theft, unauthorized disclosure, and/or unauthorized access; (ii) the sources of the breach in data security; (iii) the steps taken by Contractor to mitigate any harmful effects of the breach; and (iv) any other information, as reasonably

requested by Continental. The report will be provided to Continental as soon as possible, but no later than forty-eight (48) hours after the notification of the breach in data security. In addition, the report shall be updated weekly as more information becomes available to Contractor until the investigation is completed. Contractor shall also take appropriate remedial measures to prevent similar types of breaches in data security in the future. If any data and/or information provided to Contractor by or on behalf of Continental was compromised or stolen as a result of any breach in data security, Contractor shall take immediate action to recover such data and/or information at its sole cost and expense. FURTHERMORE, CONTRACTOR SHALL INDEMNIFY, DEFEND, AND HOLD CONTINENTAL HARMLESS FROM ANY CLAIMS (AS DEFINED IN SECTION 5.1) DIRECTLY OR INDIRECTLY ASSOCIATED WITH ANY BREACH IN DATA SECURITY WHICH HAS OR MAY HAVE RESULTED IN THEFT, UNAUTHORIZED DISCLOSURE, AND/OR UNAUTHORIZED ACCESS TO DATA AND/OR INFORMATION PROVIDED BY OR ON BEHALF OF CONTINENTAL.

## 16. ANTI-CORRUPTION UNDERTAKINGS:

16.1. Contractor shall conduct its operations in accordance with all applicable laws, rules, regulations and decrees of any governmental or regulatory body having jurisdiction over Contractor or a territory in which any of the transactions contemplated by this Contract will be carried out. Without limiting the generality of the foregoing, Contractor shall comply with all applicable laws pertaining to ethics and the prevention of corruption. Contractor agrees that all invoices, financial settlements, billings and reports remitted to Continental shall reflect properly the facts about all activities and transactions handled for the account of Continental and those documents may be relied upon as being complete and accurate. Contractor shall not take any action on Continental's behalf that would result in inadequate or inaccurate reporting of any assets, liabilities or transactions which would violate any applicable laws. Contractor shall not make or give, either directly or indirectly, any improper payments of money or anything of value to a government official, political party or official thereof, or any candidate for political office, in connection with this Contract. As a matter of corporate policy, Continental expressly prohibits payment of bribes (including facilitation or "grease" payments) to any party by Contractor in relation to this Contract or any Work hereunder. Contractor agrees to notify Continental promptly upon discovery of any instance where Contractor fails to comply with any provisions of this Section.

## 17. DATA OWNERSHIP & INTELLECTUAL PROPERTY:

17.1. All Confidential Information, data, deliverables, records, reports, drawings, and all other information related to the business affairs of Continental, including, but not limited to depths, formations penetrated, well logs, drilling reports, the results of coring, testing and surveying, and all other information obtained by either Party in the course of performance under this Contract, and all Intellectual Property Rights (as defined below) therein and relating thereto (collectively, the "*Work Product*"), shall be the sole and exclusive property of Continental, except for any Pre-Existing Technology (defined below) which is incorporated or used in the Work.

17.2. Contractor shall own all technology and methodologies Contractor has made, conceived or reduced to practice prior to the date of this Contract, and not under this Contract (the "*Pre-Existing Technology*").

17.3. Contractor agrees to disclose promptly in writing to Continental, or any person designated by Continental, all Work Product solely or jointly conceived, made, reduced to practice or learned by Contractor in the course of performing the Work for Continental, and all Pre-Existing Technology Contractor incorporates into the Work Product while performing its obligations under this Contract.

17.4. Except for Contractor's rights in the Pre-Existing Technology, Contractor agrees to assign and does hereby irrevocably assign to Continental all right, title and interest in and to the Work Product and all applicable Intellectual Property Rights therein and thereto. Contractor retains no rights to use the Work Product and agrees not to challenge the validity of Continental's ownership in the Work Product. Continental shall have the right, at its own expense, and solely in its own name, to apply for, prosecute and defend its right in the Work Product. Contractor shall, at the request of Continental, perform all acts reasonably necessary to assist Continental in perfecting and defending Continental's ownership interest in the Work Product, including aiding in any application for registration and protection of Intellectual

Property Rights.  "***Intellectual Property Rights***" shall mean all trade secret, patent, copyright, trademark, trade name, service mark, domain names and other intellectual property rights throughout the world.

17.5. Contractor hereby grants to Continental a non-exclusive, irrevocable, perpetual, worldwide, fully transferable, fully paid and royalty-free license to any Pre-Existing Technology incorporated in, or necessary to practice, any Work Product, to make, use, sell, reproduce, create derivative works of, distribute, perform and display any such Pre-Existing Technology and other rights, in any form and for any purpose.

## 18.  CONFLICT:

18.1. The terms, conditions, and requirements of this Contract shall prevail in the event of a conflict with the terms, conditions, or requirements of any work orders, purchase orders, or any other agreements of any type whatsoever, oral or written, entered into between the Parties through their duly authorized representatives. Continental's field personnel are not authorized to modify any terms of this Contract or to bind Continental to any risk allocation provisions.

## 19.  NOTICES:

19.1. All notices, reports, and other correspondence required or made necessary by the terms of this Contract shall be determined to have been properly served if and when sent by mail, fax, or email within the time required to the addresses hereinafter listed:

CONTINENTAL:

Continental Resources, Inc.

Attention : Contract Notices (Legal)

P.O. Box 268836

Oklahoma City, OK 73126

ContractNotices@clr.com

Facsimile: 405-774-5740

CONTRACTOR:

Mountain States Pressure Service, Inc.

Attention: Joshua P Sorensen

P.O. Box 1930

Rock Springs, WY 82902

Josh@mspsi.com

Facsimile: 307-362-2824

## 20.  FEDERAL REGULATIONS (AFFIRMATIVE ACTION, EQUAL EMPLOYMENT OPPORTUNITY, AND DRUG AND ALCOHOL TESTING):

20.1. Continental is, or may from time to time be, a Federal Contractor subject to compliance with various laws regarding equal employment opportunity and drug testing. Unless Contractor is exempt from compliance, Contractor shall comply with applicable regulatory requirements, including information reports and affirmative action programs, as follows:

(a)    the equal opportunity clauses set out in Title 41, Code of Federal Regulations, Section 60-1.4 "Equal Opportunity"; Section 60-250.5 "Equal Opportunity for Special Disabled Veterans and Veterans of the Vietnam Era"; and Section 60-741.5 "Equal Opportunity for Workers with Disabilities", are incorporated herein by reference to the extent applicable and made a part of this Contract; and

(b)    the drug and alcohol testing requirements of Part 199 of Title 49 Code of Federal Regulations are incorporated herein by reference to the extent applicable and made a part of this Contract. Contractor specifically agrees the provisions of Part 199 of Title 49 Code of Federal Regulations, including drug testing, education, and training, will be complied with and carried out by Contractor.

Continental may request from Contractor access to properties and records and/or certification of compliance with any such Federal regulations, which Contractor hereby agrees to provide.

20.2. Continental has adopted a drug and alcohol policy, which applies to Continental employees only.  Non-Exempt Contractors (as defined below) agree to adopt and enforce a drug and alcohol policy at least as strict as Continental's policy for all its employees, subcontractors, vendors, and other third party service providers authorized to perform Work on or be present at any Continental Location. Partially Exempt Contractors (as defined below) agree to adopt and enforce a drug and alcohol policy for all its employees, subcontractors, vendors, and other third party service providers authorized to perform Work on or be present at any Continental Location.

**Non-Exempt Contractors** – A Category 2 or Category 3 contractor with 11 or more company employees.

**Partially Exempt Contractors** – a) All Category 1 contractors, and b) Category 2 or Category 3 contractors with 10 or fewer company employees.

Notwithstanding anything to the contrary in this Section 20, Non-Exempt and Partially Exempt Contractors subject to more strict drug and alcohol policies from regulatory bodies or otherwise must meet those heightened standards when performing Work on or present at any Continental Location.

20.3. If performing services on a Continental Location and requested by an authorized agent of Continental, Contractor hereby consents to onsite Continental location drug and/or alcohol testing of Contractor's employees. Contractor agrees to immediately notify Continental of any employee working on a Continental Location who refuses to consent to drug and/or alcohol testing or who tests positive for drug and/or alcohol use. Contractor hereby agrees any employee who refuses to consent to drug and/or alcohol testing or who tests positive for drugs and/or alcohol will be removed immediately from Continental's Location, property or worksite.

**21. ASSIGNMENT:**

21.1. Contractor may not assign this Contract or any of its rights or interests under this Contract, including accounts receivable, or delegate any of its obligations or liabilities under this Contract, without the prior written consent of Continental. Contractor warrants any permitted assignee will assume all obligations in this Contract including, but not limited to the provisions set forth in Sections 4, 5, 14, 15, 18, 23, 24, 25, and 26. Any assignment or subcontracting made in contravention of this Section 21 shall, at Continental's sole option, be null and void for all purposes.

**22. WAIVER:**

22.1. No benefit or right accruing to either Party under this Contract (or any amendment or addendum) shall be deemed to be waived, and neither Party shall be estopped from claiming the benefit or right, in the absence of a waiver reduced to writing, expressly referencing this Contract, and signed by a duly authorized representative of the Party against whom such waiver is to be enforced. A waiver in any one or more instances shall not constitute a continuing waiver unless specifically so stated in the written waiver.

**23. APPLICABLE LAW:**

23.1. THIS CONTRACT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE SUBSTANTIVE LAWS OF THE STATE OF OKLAHOMA, WITHOUT GIVING EFFECT TO PRINCIPLES OF CONFLICT OF LAW. ANY SUIT OR PROCEEDING HEREUNDER SHALL BE BROUGHT EXCLUSIVELY IN OKLAHOMA COUNTY, OKLAHOMA, AND EACH PARTY CONSENTS TO THE PERSONAL JURISDICTION OF THE COURTS, STATE AND FEDERAL, LOCATED THEREIN. EACH PARTY AGREES TO WAIVE ANY OBJECTION THE STATE AND FEDERAL COURTS OF OKLAHOMA COUNTY, OKLAHOMA ARE AN INCONVENIENT FORUM.

**24. ATTORNEYS' FEES:**

24.1. In the event of any action related to this Contract, the prevailing Party shall be entitled to recover its reasonable attorneys' fees and costs.

**25. GENERAL SAVINGS CLAUSE:**

25.1. If any provision in this Contract or the application of any such provision is held to be partially or completely contrary to any applicable laws and/or unenforceable, the Contract shall be deemed to be amended to partially or completely modify such provision or portion thereof to the minimum extent necessary to make it enforceable, or, if necessary, the Contract shall be deemed to be amended to delete the unenforceable provision or portion thereof.

**26. NO PUBLICITY**

26.1. Without express advance written permission, Contractor is prohibited from referring to Continental, or its affiliates, as a client, customer, or user of Contractor and Contractor may not use Continental's name, abbreviation, or logo in Contractor's marketing materials, website(s), or other social media.  Contractor shall not make any public announcement regarding this Contract, the terms of this Contract, or any Work hereunder, without Continental's express advance written permission.

**27. SURVIVAL OF TERMS:**

27.1. Notwithstanding the termination of this Contract, the Parties shall continue to be bound by the provisions of this Contract which reasonably require some action or forbearance after such termination, including but not limited to Sections 3, 4, 5, 11, 14, 15, 16, 17, 23, 26 and 27.

**28. COUNTERPART EXECUTION:**

28.1. This Contract may be executed and delivered in one or more counterparts, each of which when executed and delivered shall be deemed to be an original instrument, and all of which when executed shall constitute one and the same instrument. The exchange of copies of this Contract and of signature pages by facsimile, portable document format, or similar electronic transmission shall constitute effective execution and delivery of this Contract as to the Parties, and shall be deemed to be their original signatures for all purposes.  Each Party which delivers an executed counterpart signature page by facsimile, portable document format, or similar electronic transmission shall promptly thereafter deliver a manually executed counterpart signature page to the other Party; provided, however, the failure of either Party to do so shall not affect the validity, enforceability, or binding effect of this Contract.

**29. EXECUTION WARRANTY:**

29.1. The persons signing below represent and warrant they have all requisite power, authority, and authorization to execute this Contract on behalf of the Parties for whom they sign, and by signing below this Contract shall be fully binding upon and enforceable against such Parties and their present and future affiliates.

**30. EFFECTIVE TIME OF CONTRACT:**

30.1. This Contract shall be deemed effective and shall apply to all Work performed by Contractor for Continental on or after the Commencement Date. In addition, this Contract shall apply to all Work performed by Contractor for Continental prior to the Commencement Date; provided there was no prior written agreement governing such Work.

## 31. CONSPICUOUS PROVISIONS:

31.1. The parties acknowledge that the provisions contained in this Agreement that are set out in all capital letters satisfy the requirements of the express negligence rule and any other requirement at law or in equity that provisions contained in a contract be conspicuously marked or highlighted.

## 32. ENTIRE AGREEMENT/MODIFICATIONS:

32.1. This Contract set forth the entire Agreement between Contractor and Continental with respect to its subject matter. All prior negotiations and dealings regarding the subject matter hereof are superseded by this Contract. Continental's field personnel are not authorized to modify the Contract or to bind Continental to risk allocation provisions.

IN WITNESS WHEREOF, the Parties have executed and delivered these presents the day and year first written above.

CONTINENTAL:                                CONTRACTOR:

CONTINENTAL RESOURCES, INC.                 MOUNTAIN STATES PRESSURE SERVICE, INC.

By: _Scott Donnelly_ _____       By: _Josh Sorensen_ _____
    D79A2E8C2D384AC...                          FABE297B0F3F4C5...

Name: Scott Donnelly _____       Name: Josh Sorensen _____

Title: VP Northern Production _____       Title: President _____

MASTER SERVICE CONTRACT
CONTINENTAL RESOURCES, INC.

EXHIBIT "A"
SERVICES OFFERED BY CONTRACTOR

The following is a general list of the primary Work offered by Contractor. Failure to complete this Exhibit "A", or failure to list specific Work provided by Contractor, shall not affect the validity of this Contract which applies to all Work performed by Contractor for Continental.

Description of Work:

DocuSign Envelope ID: 6CA80A12-B418-47E8-A84A-5E6C93A12BAE

MASTER SERVICE CONTRACT
CONTINENTAL RESOURCES, INC.

EXHIBIT "B"
MINIMUM INSURANCE REQUIREMENTS

| **REQUIRED INSURANCE COVERAGE:** | Category #1 | Category #2 | Category #3 |
|---|---|---|---|
| **Workers' Compensation** | Statutory | Statutory | Statutory |
| **Employer's Liability** | E.L. Each Accident: $500,000<br><br>E.L. Disease -<br><br>Each Employee:<br><br>$500,000<br><br>E.L. Disease -<br><br>Policy Limit:<br><br>$500,000 | E.L. Each Accident: $1,000,000<br><br>E.L. Disease -<br><br>Each Employee:<br><br>$1,000,000<br><br>E.L. Disease -<br><br>Policy Limit:<br><br>$1,000,000 | E.L. Each Accident: $1,000,000<br><br>E.L. Disease -<br><br>Each Employee:<br><br>$1,000,000<br><br>E.L. Disease -<br><br>Policy Limit:<br><br>$1,000,000 |
| **Commercial General Liability**<br><br>Bodily Injury & Property Damage | Each Occurrence:<br><br>$500,000<br><br>General Aggregate:<br><br>$500,000<br><br>Products - Completed Operations:<br><br>$500,000 | Each Occurrence:<br><br>$1,000,000<br><br>General Aggregate:<br><br>$1,000,000<br><br>Products - Completed Operations:<br><br>$1,000,000 | Each Occurrence:<br>$1,000,000<br><br>General Aggregate:<br><br>$2,000,000<br><br>Products - Completed Operations:<br><br>$2,000,000 |
| **Automobile Liability**<br><br>Bodily Injury & Property Damage | $500,000 CSL | $1,000,000 CSL | $1,000,000 CSL |
| **Excess Liability** | | $2,000,000 | $5,000,000 |

| **TYPE OF CONTRACTORS/VENDORS:** | CAT #1 (No ISN Pre-qualification or CSM Applicable) | CAT #2 (Standard ISN Pre-qualification and CSM Applicable) | CAT #3 (High Risk ISN Pre-qualification and CSM Applicable) |
|---|---|---|---|
| Casing Crews / Lay-down Crews | | | X |
| Cathodic Protection | | X | |
| Cementing Services | | | X |
| Chemical Vendors - Hazardous/Non-hazardous Transportation of Chemicals | | X | |
| Coiled Tubing / Snubbing Units | | | X |
| Communication Vendors | X | | |
| Completion / Workover / Well Service Rigs | | | X |
| Compression / Pump Rentals / Maintenance | | X | |
| Contract Engineers | | X | |
| Contract Geologists | | X | |
| Contract Pumpers / Operators | | X | |
| Crane / Heavy Equipment Operations | | | X |
| Directional Drilling Vendors | | X | |
| Drilling Contractors | | | X |
| Drilling Fluid Vendors | | X | |
| Drone Services | | | X |
| Electricians | | X | |
| Fishing Tool Vendors | | X | |
| Fracture Stimulation / Acidizing | | | X |
| Fuel (Diesel, Gasoline) - Transportation | | X | |
| Gate Guards | X | | |
| General Consulting (Escorted Onsite) | X | | |
| General Contracting / Construction (e.g., Carpenters) | X | | |
| General Oilfield Services (e.g., Frac Tank / Water Tank / Living Quarter Vendors) | | X | |

| | | | |
|---|---|---|---|
| Hot Oil or Steamer Service | | | X |
| Land Brokers | X | | |
| Location Building / Reclamation / Remediation / Maintenance (e.g., Snow Removal) | | X | |
| Logging (e.g., Electric Dipmeter, SMC, DST, BHP, Survey, CBL)/Open Hole | | | X |
| Mud Loggers | | X | |
| Mud System Equipment Rental/Solids Control | | X | |
| Mud Vendors | | X | |
| Non-Destructive Testing of Oil Country Tubular Goods (On Location) | | X | |
| Onsite Consulting - Not Escorted (*e.g.*, Industrial Hygiene, Rig Inspectors) | X | | |
| Onsite/Project HSSE Support (Equipment and Personnel) | | X | |
| Packers | | X | |
| Painting Contractors | | X | |
| Perforating Companies / Explosives / Chemical Cutting | | | X |
| Pressure Testing (*e.g.*, BOP, Lubricator, Tubing, Connections) | | | X |
| Reamers/Stabilizers / Jars / Drill Collars / Wear Bushing Rentals | | X | |
| Rental Equipment (e.g., BOP, Choke Manifold- Exposure to High Surface Pressure) | | X | |
| Rig Movers/Heavy Haulers | | | X |
| Roustabouts/ Lease Crews | | | X |
| Security (Armed) | | X | |
| Seismic Contractors | | | X |
| Supply Vendors - Deliver to Location (e.g., Hot Shots) | | X | |

| | | | |
|---|---|---|---|
| Surveyors | X | | |
| Trucking - Oilfield / HotShots (e.g., Oil, Produced Water, Water) | | X | |
| Vacuum Trucks | | X | |
| Waste Disposal Contractors (e.g., NORM, Contaminated Soils, etc.) | | X | |
| Weed Killing / Mowing / Landscaping | X | | |
| Welders | | X | |
| Wellhead Vendors | | | X |
| Wellsite Consultants (e.g., Frac, Drilling, Workover) | | X | |
| Wireline Units | | | X |
| Any services not specifically listed above | | | X |

**Contractor Category Definitions**

**Category 1** - Contractors and vendors that may infrequently or routinely enter Continental field work locations, including, but not limited to, drilling locations, completions/well servicing locations, production locations, compressor facilities, central tank batteries, and all other related well site locations and laydown/storage yard locations, but either only perform incidental Work (i.e., carpentry, weed spraying, mowing/landscaping, light vehicle deliveries, and consulting) or do not perform any hands-on work at Continental work locations.

Category 1 contractors are required to (1) complete the insurance verification process through the Contractor Management System of ISNetworld ("ISN"), which is an element of Continental's Integrated Contractor Management Program, (2) agree to work in accordance with all applicable regulatory requirements and Continental's HSE Policy, and (3) have a Drug & Alcohol Free Workplace Policy.

**Category 2** - Contractors and vendors that routinely enter Continental field work locations, including, but not limited to, drilling locations, completions/well servicing locations, production locations, compressor facilities, central tank batteries, and all other related well site locations and perform hands-on activities involving oil and gas facilities, equipment (up-hole or down-hole), produced fluids/hydrocarbons, and/or related chemicals.

Non-Exempt - Category 2 contractors are required to (1) complete the "CAT-2" ICMP HSE requirements, including the ISN Standardized Safety Questionnaire and pre-qualification requirements, (2) meet all minimum HSE Program and Training requirements based on service line(s), and (3) have a Drug & Alcohol Free Workplace Policy at least as strict as Continental's policy.

Partially Exempt - Category 2 contractors are required to (1) complete the insurance verification process through the Contractor Management System of PEC, which is an element of Integrated Contractor Management Program, (2) agree to work in accordance with all applicable regulatory requirements and Continental's HSE Policy, and (3) have a Drug & Alcohol Free Workplace Policy.

**Category 3** - Contractors and vendors that routinely enter Continental field work locations, including, but not limited to, drilling locations, completions/well servicing locations, production locations, compressor facilities, central tank batteries, and all other related well site locations and perform "high risk" activities generally understood to include heavy equipment ground-breaking activities, any heavy equipment operation, work that involves down-hole operations, pressure pumping operations, use of explosives, hot work (i.e., spark or flame producing activities) operations and any other activities that Continental, in its sole discretion, defines as "high risk."

Non-Exempt - Category 3 contractors are required to (1) complete the "CAT-2" ICMP HSE requirements, including the ISN Standardized Safety Questionnaire and pre-qualification requirements, (2) meet all minimum HSE Program and Training requirements based on service line(s), and (3) have a Drug & Alcohol Free Workplace Policy at least as strict as Continental's policy.

Partially Exempt - Category 3 contractors are required to (1) complete the insurance verification process through the Contractor Management System of PEC, which is an element of Integrated Contractor Management Program, (2) agree to work in accordance with all applicable regulatory requirements and Continental's HSE Policy, and (3) have a Drug & Alcohol Free Workplace Policy.

NOTE: Continental, in its sole discretion, will categorize contractors performing Work for Continental according to this Exhibit "B."  The included definitions and table of contractors are provided as a guide to use when categorizing contractors; however, from time-to-time based on risk and other certain factors, contractors may be categorized differently than described above and/or may be exempted from these requirements.

**The following apply to all policies:**

1.  Continental Group shall be included as additional insured on all policies (except Workers' Compensation coverage)

2.  All policies will contain a Waiver of Subrogation in favor of Continental Group and its Insurers

3.  Coverage under all insurance required to be carried by Contractor will be primary insurance and without any right of contribution from any of Continental Group's insurance which may apply, and each policy will name Continental Group as additional insured on all insurance (except workers' compensation) described herein to the fullest extent permitted by any applicable laws and waive subrogation against Continental Group and its insurers

4.  Thirty days written notice to Continental Group of cancellation or any material change

Nos. 1—3 shall apply to the extent of the risks and liabilities assumed by Contractor in this Contract.

A.  **Workers' Compensation and Employer's Liability, to include:**

1.  Statutory Workers' Compensation for state of hire/operation
2.  Employer's Liability
3.  Other States Insurance
4.  Voluntary Compensation
5.  Alternate Employer/Borrowed Servant

B.  **Commercial General Liability (Occurrence Form), to include:**

1.  Premises/Operations
2.  Independent Contractors

| | |
|---|---|
| 3. | Broad Form Personal (Bodily) Injury and Property Damage |
| 4. | Products/Completed Operations Coverage |
| 5. | Blanket Contractual Liability |
| 6. | Blowout and Cratering |
| 7. | Explosion, Collapse and Underground |
| 8. | Sudden and Accidental Pollution Liability |
| 9. | Endorsement removing the "Care Custody & Control Exclusion" |
| 10. | Severability, Actions Over |

C.   **Commercial Automobile Liability, to include:**

1. Owned Vehicles
2. Non-Owned Vehicles
3. Hired Vehicles

D.   **Professional Liability**
If the work involves applicable professional services, Contractor will carry professional liability insurance with a limit not less than $1,000,000 per occurrence.

E.   **Marine Vessels and Watercraft Liability; Aircraft Liability**
If the Work requires the use of marine vessels or other watercraft, Contractor will carry, or require the owner of the watercraft to carry: (i) all risk hull insurance in an amount equal to the vessel's declared value and (ii) protection and indemnity insurance, including, but not limited to, collision liability, removal of debris, towing liability and coverage for Admiralty benefits and damages under the Jones Act and general maritime law, in a minimum amount of $1,000,000 combined single limit per occurrence, and that in all such insurance the "other than owner clause" will be deleted.  If the Work requires the use of aircraft, Contractor will carry, or require the owner of the aircraft to carry: (i) all risks hull insurance in the amount equal to the replacement value of the aircraft and (ii) bodily injury liability, including passenger liability and property damage, of not less than $10,000,000 combined single limit per occurrence.

F.   **Unmanned Aerial Vehicle (UAV) Policy**
If the Work involves the use of unmanned aerial vehicles, Contractor will carry, or require the owner of the unmanned aerial vehicle to carry: (i) all risk hull insurance in an amount equal to the replacement value of the unmanned aerial vehicle; (ii) Owned, Non-Owned, and Hired unmanned aerial vehicle coverage; (iii) bodily injury liability, including property damage of not less than $1,000,000 combined single limit per occurrence; (iv) ground equipment coverage, not less than $1,000,000 combined single limit per occurrence; (v) personal injury coverage (for privacy), not less than $1,000,000 combined single limit per occurrence.

G.   **Umbrella or Excess Liability, (Occurrence Form) (following form or at least as broad as underlying) excess of:**

1. Employer's Liability
2. Commercial General Liability
3. Commercial Automobile Liability
4. Professional Liability
5. Marine Vessels and Watercraft Liability; Aircraft Liability
6. Unmanned Aerial Vehicle (UAV) Policy

H.   **All policies of insurance** shall be placed with American Insurance Companies rated by A.M. Best Company B V or higher or with Underwriters at Lloyds of London or the Member Companies of the Institute of London Underwriters.  No other insurer may be used without specific written authorization from Continental Group.

Continental reserves the right to require certified copies of any or all policies.

The above Contractor's minimum insurance requirements are subject to change at the discretion of Continental.

MASTER SERVICE CONTRACT
CONTINENTAL RESOURCES, INC.

EXHIBIT "C"

**<u>Non-Exempt Contractors</u>**



2017 Non-Exempt
Contractor Notificatio

**<u>Partially Exempt Contractors</u>**



2017 Partially Exempt
Contractor Notificatio

**DocuSign**

## Certificate Of Completion

Envelope Id: 6CA80A12B41847E9A84AFE6C93A12BAE                                       Status: Completed
Subject: CW2289253 - MOUNTAIN STATES PRESSURE SERVICE, INC. - Master Service Contract.docx
Source Envelope:
Document Pages: 25                          Signatures: 2                            Envelope Originator:
Certificate Pages: 5                        Initials: 0                              Amy Higgins
AutoNav: Enabled                                                                     20 N Broadway
EnvelopeId Stamping: Enabled                                                         Oklahoma City, OK  73102
Time Zone: (UTC-06:00) Central Time (US & Canada)                                    Amy.Higgins@clr.com
                                                                                     IP Address: 216.109.110.11

## Record Tracking

Status: Original                            Holder: Amy Higgins                      Location: DocuSign
        2/3/2022 12:23:45 PM                        Amy.Higgins@clr.com

| Signer Events | Signature | Timestamp |
|---|---|---|
| Josh Sorensen<br>josh@mspsi.com<br>President<br>Security Level: Email, Account Authentication<br>(None) | *Josh Sorensen*<br>FABE297B0F3F4C5...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 162.216.119.68 | Sent: 2/3/2022 12:25:05 PM<br>Viewed: 2/3/2022 1:43:18 PM<br>Signed: 2/3/2022 2:00:59 PM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 2/3/2022 1:43:18 PM<br>    ID: 4958a7ce-f8cc-410c-86f7-2b6cc37940c7 | | |
| Scott Donnelly<br>Scott.Donnelly@clr.com<br>VP Northern Production<br>Security Level: Email, Account Authentication<br>(None) | *Scott Donnelly*<br>D79A2E8C2D384AC...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 12.25.114.245 | Sent: 2/3/2022 2:01:02 PM<br>Viewed: 2/3/2022 5:22:32 PM<br>Signed: 2/3/2022 5:22:47 PM |
| **Electronic Record and Signature Disclosure:**<br>    Accepted: 2/3/2022 5:22:32 PM<br>    ID: a1ad8208-fac8-4ae5-b487-5cc10f0963c0 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 2/3/2022 12:25:05 PM |
| Certified Delivered | Security Checked | 2/3/2022 5:22:32 PM |

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Signing Complete | Security Checked | 2/3/2022 5:22:47 PM |
| Completed | Security Checked | 2/3/2022 5:22:47 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 3/29/2021 10:26:20 AM
Parties agreed to: Josh Sorensen, Scott Donnelly

Case 5:24-cv-00463-J   Document 9-1   Filed 05/10/24   Page 28 of 30

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Continental Resources, Inc. - ELA (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Continental Resources, Inc. - ELA:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: cindy.jones@clr.com

**To advise Continental Resources, Inc. - ELA of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at cindy.jones@clr.com and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Continental Resources, Inc. - ELA**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to cindy.jones@clr.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Continental Resources, Inc. - ELA**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to cindy.jones@clr.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent..  The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Continental Resources, Inc. - ELA as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Continental Resources, Inc. - ELA during the course of your relationship with Continental Resources, Inc. - ELA.